UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBRA GARRETSON and RICHARD GARRETSON,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>DR. REDDY'S LABORATORIES INC., DR. REDDY'S LABORATORIES, LTD., DR. REDDY'S LABORATORIES SA, WALMART INC. f/k/a WALMART STORES, INC. SAM'S WEST, INC., WALGREENS BOOTS ALLIANCE, INC., WALGREEN CO., AND BOND DRUG COMPANY OF ILLINOIS, LLC D/B/A WALGREENS,<br><br>    *Defendants.* | Case No. 3:21-cv-1366 |

## WALMART INC. AND SAM'S WEST, INC.'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REMAND

This Court should deny Plaintiffs' motion to remand, because Plaintiffs' claims against Walgreens Boots Alliance, Inc., Walgreen Co., and Bond Drug Company of Illinois d/b/a Walgreens (collectively, "Walgreens") are preempted by federal law and do not state viable product liability claims under Illinois law. The Southern District of Florida has provided a veritable roadmap for rejecting Plaintiffs' claims as lacking any reasonable basis in fact or state law. That court—which presently has before it the *In re Zantac* multidistrict litigation (the "Zantac MDL") comprising over 1,700 claims alleging harm from use of Zantac and its generic equivalent ranitidine—has through hundreds of pages of decisions analyzed in exhaustive detail the product liability causes of action pled against mere sellers of Zantac product. These decisions resulted in the complete dismissal, with prejudice, of **every MDL claim pled against every retailer defendant,** ***including Walgreens***. Plaintiffs' Complaint is a near carbon copy of the MDL allegations. A decision to deny Plaintiffs' motion to remand is, therefore, an easy one. As already

explained by the Zantac MDL Court, Plaintiffs' claims against Walgreens have no chance of success. Therefore, the three Walgreens parties were sham defendants whose presence did not prevent the removal of this action by Walmart Inc. and Sam's West, Inc. (collectively, "Walmart").[1]

Alternatively, for the reasons set forth in Defendants' previously filed Motion to Stay (Dkt. No. 5), the Court should defer ruling on Plaintiffs' motion to remand pending the Judicial Panel on Multidistrict Litigation's decision on whether this action should be transferred to the *In re Zantac* multidistrict litigation.

## BACKGROUND

This litigation arises out of the claim that use of the antacid medication Zantac (ranitidine) causes various types of cancers. On February 6, 2020, the JPML created an MDL in the Southern District of Florida before Judge Robin Rosenberg for pretrial coordination of cases like this one "in which plaintiffs allege that they developed cancer as a result of NDMA formed from Zantac." *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020). To date, over 1,700 actions involving thousands of plaintiffs have been filed in or transferred to the Zantac MDL and an additional over 140,000 claimants are participating in the Zantac MDL registry.

---

[1] Walmart acknowledges and respectfully disagrees with this Court's ruling in *Bayer v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 3:21-cv-01084-SPM, 2021 WL 4192142, at *1 (S.D. Ill. Sept. 15, 2021). It is unclear from the *Bayer* decision what allegations the Court was referring to in concluding the plaintiff pled "actions that the non-diverse Defendants could have taken under federal law that could provide a basis for the claims brought against them." *Id.* at *1. For the reasons provided in this opposition, Walmart submits the *Garretson* Plaintiffs' Complaint against the non-diverse Walgreens defendants has "no chance of success." *Id.* (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)).

On June 22, 2020, plaintiffs' leadership counsel in the MDL—including Plaintiffs' counsel, Tracy Finken—filed three master complaints on behalf of all plaintiffs: a personal injury complaint, a consumer class action complaint, and a third-party payor class action complaint. The master personal injury complaint alleged claims against "retailer defendants," including Walgreens.

After extensive briefing and oral argument, the MDL Court dismissed all personal injury claims against all retailer defendants as preempted. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 510 F. Supp. 3d 1234, 1236 (S.D. Fla. 2020). Most claims were dismissed with prejudice—including claims for strict liability design defect and negligent failure to warn that are substantively identical to those brought against Walgreens in this action. *Id.* The MDL Court allowed re-pleading of the master complaints to assert amended claims against retailers based on a limited set of negligence theories. *See id.* at 1261−62.

MDL plaintiffs' amended personal injury master complaint asserted a single negligent storage and transportation claim against retailer defendants. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 2685605, at *3 (S.D. Fla. June 30, 2021) (listing allegations in the amended personal injury complaint). The amended class complaints included claims against "store brand defendants," including Walgreens, arising from their sale of store branded generic ranitidine products. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 2865869, at *4 (S.D. Fla. July 8, 2021) (listing allegations in medical monitoring class action complaint).

On June 30 and July 8, 2021, the MDL Court issued a series of orders on defendants' various motions to dismiss the three amended master complaints. In these orders, the MDL Court held that all claims asserted in the amended master class complaints against retailers that sold

3

store-brand generic ranitidine (including Walgreens) were preempted by federal law. *See In re Zantac*, 2021 WL 2865869, at *23. The MDL Court also held that the MDL plaintiffs' "negligent storage and transportation" claim alleged in the amended master personal injury complaint—which is effectively identical to the negligent storage and transportation claims pled here by Plaintiffs—was implausible and must for that reason be dismissed, *with prejudice*. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 2685605, at *8 (S.D. Fla. June 30, 2021).

On September 23, 2021, Plaintiffs filed their Complaint in the Circuit Court for Madison County, Illinois, alleging Plaintiff Debra Garretson sustained injuries after using generic ranitidine tablets. Dkt. No. 1-1. Despite the MDL Court's orders dismissing indistinguishable claims against the retailer defendants as preempted by federal law and implausibly pled, Plaintiffs' Complaint names the Illinois-based Walgreen Defendants, ostensibly to destroy diversity jurisdiction and avoid the MDL's rulings. *Id.* ¶¶ 3−5.

Walmart removed the action to this Court on Friday, October 29, 2021, and thereafter filed a tag-along notice with the JPML. *See* Dkt. No. 1. Defendants then moved to stay this case pending transfer to the MDL Court, a motion that remains pending. Dkt. No. 5. Plaintiffs filed their Emergency Motion to Remand on November 5, 2021. Dkt. No. 12. The JPML issued an order conditionally transferring this action to the MDL Court, which Plaintiffs opposed on November 10, 2021. *In re Zantac*, MDL 2924, ECF Nos. 883, 914 (J.P.M.L.). Pursuant to the JPML's briefing schedule, Plaintiffs have until November 29, 2021, to file their Motion to Vacate. *Id.* at ECF No. 916.

## REMOVAL STANDARD

A defendant is fraudulently joined and its presence in the lawsuit is ignored for purposes of determining diversity where "there exists no 'reasonable possibility' that a state court would rule against the in-state defendant." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir.

1999) (quoting *Poulos v. Naas Foods, Inc.*, 959 F. 2d 69, 73 (7th Cir. 1992)). Plaintiffs' statement that removal statutes are strictly construed is of little relevance here, where the question is whether Plaintiffs fraudulently joined a nondiverse defendant to defeat diversity jurisdiction.[2] A plaintiff's right to a state forum has limits and must be balanced against a "defendant's right to remove a case that could be heard in federal court," which is "at least as important." *Young v. Ford Motor Co.*, No. 07-cv-0297, 2007 WL 1847663, at *3 (E.D. Cal. June 27, 2007) (quotation omitted). To protect this equilibrium, "[f]ederal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907) ("Federal courts … should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."). Rather than the inflexible approach recommended by Plaintiffs, the Supreme Court and the Seventh Circuit have shown a willingness to liberally construe the removal statutes to achieve the wise and equitable outcome. *See, e.g.*, *Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("There is no presumption against federal jurisdiction in general, or removal in particular.").

---

[2] The strict construction principle derives from *Shamrock Oil & Gas Corp. v. Sheets*, where the Supreme Court noted that changes Congress made to the Judiciary Act in 1887 evidenced an intent "to restrict the jurisdiction of the federal courts on removal…." 313 U.S. 100, 108 (1941). In *Breuer v. Jim's Concrete of Brevard, Inc.*, the Supreme Court recognized that the *Shamrock Oil* strict construction principle was superseded by 1948 amendments to the federal removal statute:

> Breuer relies heavily on our statement in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 85 L. Ed. 1214, 61 S. Ct. 868 (1941), that "the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of [removal legislation] . . . ." *Id.* at 108-109 . . . . **But whatever apparent force this argument might have claimed when *Shamrock* was handed down has been qualified by later statutory development.**

538 U.S. 691, 697–98 (2003) (emphasis added).

## ARGUMENT

**I.    The Walgreens defendants were fraudulently joined because Plaintiffs have no basis for their claims against them**

Plaintiffs' claims against Walgreens have no possible merit because they either are preempted under the MDL Court's rulings, which are consistent with federal court precedent, *see In re Zantac*, 510 F. Supp. 3d at 1236; *see also PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), and *Mutual Pharms. Co., Inc. v. Bartlett*, 133 S. Ct. 2466 (2013), or are implausible. *See In re Zantac*, 2021 WL 2685605, at *9.[3] Plaintiffs do not argue these defenses are identical to the potential defenses of the diverse Dr. Reddy's manufacturer defendants. Therefore, the "common defense rule" does not defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship. *See Smallwood v. Illinois Cent. R. Co.*, 352 F.3d 220, 224 (5th Cir. 2003) (holding common defense rule bars fraudulent joined-based removal only if "there is no possibility of recovery against the local defendant and that showing is a fortiori common to *all* defendants.") (emphasis added); *Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011) (upholding

---

[3]    Plaintiffs make much of the fact the MDL Court previously remanded Zantac personal injury claims. *See* Pls.' Mot. at 3. Yet Plaintiffs reliance on these remand decisions is misplaced in that all were entered *prior* to the MDL Court's orders this summer dismissing with prejudice the negligent storage and transportation claims pled against Walgreens and other retailers through the master personal injury and class action complaints. This sequence of events is critical because the MDL Court's decision to remand personal injury claims turned on the viability of these negligent transportation and storage allegations. *See In re Zantac*, 9:20-md-02924-RLR, ECF No. 2824 (Feb. 19, 2021) (considering only the viability of the California plaintiffs' negligent storage and transportation allegations). At that time, based on then-available briefing, the MDL Court concluded it was theoretically possible storing Zantac above the temperature guidelines printed on the drug's label could establish a breach of a state law duty. As is explained in greater detail below, the Court has since concluded a room-temperature drug, like Zantac, "is properly stored and transported, and may be sold pursuant to [federal law], even when it is subjected to temperatures" well in excess of the temperature range stated on the label. *In re Zantac*, 2021 WL 2685605, at *8. For all the reasons provided herein, there is no "reasonable possibility" an Illinois state court would sustain the Garretson Plaintiffs' negligence allegations. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999).

application of fraudulent joinder doctrine where the common defense did not apply equally to all diverse defendants and to the non-diverse one).

> **A.  A plainly meritorious preemption defense is a proper ground for deeming a non-diverse defendant fraudulently joined**

It is well established that a Plaintiff may not avoid diversity jurisdiction by advancing preempted claims against a non-diverse defendant. Plaintiffs are misguided in their belief that fraudulent joinder cannot be predicated on preemption. *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 705–06 (4th Cir. 2015); *see also Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F. Supp. 1399, 1406–07 (D. Colo. 1989). This is because a plaintiff has no chance of recovering from a non-diverse defendant on a preempted claim. Plaintiffs attempt to avoid this obvious fact by arguing that preemption cannot support removal based on fraudulent joinder and cite the Northern District of Illinois's flawed *Hawkins* decision, which misinterpreted Seventh Circuit precedent. *See* Pls.' Mot. at 5 (citing *Hawkins v. Boehringer Ingelheim Pharms., Inc. et al.*, No. 20-cv-6509, 2021 WL 4498652 (N.D. Ill. Jan. 19, 2021)). The *Hawkins* court improperly construed the Seventh Circuit's decision in *Bennett v. Southwest Airlines Co.*, 493 F.3d 762, 763 (7th Cir. 2007), as wholly precluding preemption as grounds for fraudulent joinder. Unlike *Hawkins* and the instant case, *Bennett* concerned removal based on federal question jurisdiction, which "depends on the claim for relief rather than potential defenses." 493 F.3d at 763. *See also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392–93 (1987) (the "well-pleaded complaint" rule "applies only to statutory 'arising under' cases," not to diversity jurisdiction).

As previously noted, removal is proper on diversity grounds where there is no reasonable possibility that Plaintiffs can succeed on their claims, *for any reason*, against the only named non-diverse defendants. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999). There is no carve-out for claims that fail by reason of a clearly applicable defense, and

7

Plaintiffs cite none. The remaining cases Plaintiffs cite—all of them trial-court opinions from other jurisdictions—are not persuasive. By contrast, at least one federal appellate court has expressly recognized that fraudulent joinder may be predicated on preemption. *See Johnson*, 781 F.3d at 705–06 (finding fraudulent joinder based on preemption by the FCC). District courts have reached the same conclusion, frequently finding fraudulent joinder on the basis of affirmative defenses, including preemption. *See, e.g.*, *DeLuca v. Liggett & Myers, Inc.*, No. 00-7781, 2001 WL 629398, at *3 (N.D. Ill. May 24, 2001) (finding fraudulent joinder because the Federal Cigarette Labeling and Advertising Act clearly preempted the claims against the non-diverse cigarette retailers); *Frontier Airlines*, 758 F. Supp. at 1406–07 (finding fraudulent joinder based on FAA preemption). *See also Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1298 n.3 (11th Cir. 2007) ("[A]pplication of an affirmative defense can support a finding of fraudulent joinder."). *Cf. In re Briscoe*, 448 F.3d 201, 219 (3d Cir. 2006) ("Courts have . . . recognized that a statute of limitations defense is properly considered in connection with a fraudulent joinder inquiry.").

### B. Plaintiffs' design defect and failure-to-warn claims are preempted

Plaintiffs bring eight claims against Walgreens—Counts II, III, V, VII, VIII, IX, X, and XII: Strict Liability–Design Defect, Negligence–Failure to Warn, General Negligence, Breach of Express Warranties, Breach of Implied Warranties, Unjust Enrichment, Negligent Storage and Transportation, and Loss of Consortium. Dkt. No. 1-1 ¶¶137−170, 184−203, 216−253, 302−304.

The Zantac MDL Court already held that all claims for design defect or failure-to-warn brought against retailer defendants—like Walgreens here—are preempted by federal law.[4] *See In*

---

[4] Relying on the Supreme Court's decision in *Wyeth v. Levine*, 555 U.S. 555 (2009), Plaintiffs declare there is a "presumption against preemption." Pls.' Mot. at 6. This misguided canon of statutory construction has been effectively abolished since *Levine*. *See Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1677 (2019) (omitting any reference to the "presumption" in recitation of *Levine*

8

*re Zantac*, 510 F. Supp. 3d at 1236. The MDL Court's holding was dictated by ample precedent. The Supreme Court held in *Mensing* and *Bartlett* that design defect and failure-to-warn claims are preempted because they cannot remedy design defects or provide additional warnings while remaining in compliance with federal law. *See Mensing*, 564 U.S. at 623–24 ("[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which in turn is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." (emphasis added)); *see also Bartlett*, 570 U.S. at 475 ("[S]tate-law design-defect claims that turn on the adequacy of a drug's warnings are pre-empted by federal law under [*Mensing*]."). As the MDL Court recognized, these rulings apply to retailer defendants—like Walgreens here—who are legally prohibited from unilaterally or independently changing a drug's label or design from that of the reference listed or brand-name drug. *Mensing*, 564 U.S. at 612−15, 618; *Bartlett*, 570 U.S. at 475, 483−484; *Guilbeau v. Pfizer, Inc.*, 880 F.3d 304, 311 (7th Cir. 2018).

Plaintiffs try to skirt the MDL Court's cogent and accurate preemption analysis by arguing a design defect claim, like theirs, is not preempted when based on "post-approval scientific evidence the FDA never considered." Pls.' Mot. at 7. According to Plaintiffs' interpretation of *Bartlett* and *Mensing*, the Supreme Court has held only that design-defect claims are preempted when state law would require a party to stop selling a drug that FDA "has found safe and effective on the available scientific evidence." Pls.' Mot. at 6. Plaintiffs say their claims are different, somehow, because Walgreens continued selling Zantac despite the release of new scientific information not previously considered by FDA that supposedly proved "ranitidine's propensity to

---

holding and reiterating instead the "assumption" that "historic police powers" should not be "superseded … unless that was the clear and manifest purpose of Congress.")

9

degrade into the dangerous carcinogen NDMA." Pls.' Mot. at 7. This same flawed preemption logic was rejected out-of-hand by the MDL Court. "[A] plain reading of *Bartlett*" establishes that "any claim [against Zantac retailers] based upon drug design is pre-empted." *See In re Zantac*, 510 F. Supp. 3d at 1249–53 (distinguishing the same citations made by Plaintiffs here to *In re Yasmin & Yaz* and *Hassett*).[5] Plaintiffs cannot succeed under Illinois law on their design defect claims against Walgreens, no matter what type of scientific support they believe they have supporting their theory that Zantac was inherently defective.

Even if this design defect theory were somehow sufficiently parallel to federal law to evade preemption (it is not), Illinois design defect law does not support Plaintiffs' claims against Walgreens. In a *Yasmin & Yaz* MDL decision (subsequent to the 2013 *Yasmin & Yaz* order cited by Plaintiffs at page 9 of their Motion), this Court held that, assuming there does exist a state law preemption exception for parallel defect claims, "the exception only applies to 'pure' design defect claims *i.e.* design defect claims that do *not* turn on the adequacy of drug labeling." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2015 WL 7272766, at *4 (S.D. Ill. Nov. 18, 2015) (emphasis in original). Ignoring the fact that Plaintiffs' design defect claim against Walgreens *does* turn on the adequacy of the Zantac

---

[5] Plaintiffs' reliance on the Illinois Court of Appeals decision *Guvenoz v. Target* is equally unavailing. Pls.' Mot. at 8. Not surprisingly, in the six years since the *Guvenoz* decision, no court has cited with approval the court's conclusion that state law claims can be deemed parallel to federal law requirements (and therefore not preempted) merely because the drug was recalled prior to the litigant's action. *See Guvenoz v. Target Corp.*, 2015 IL App (1st) 133940, ¶ 75, 30 N.E.3d 404, 419. Preemption does not hinge on a drug or device's marketing status. *See, e.g.*, *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 474 n.13 (W.D. Pa. 2012) (dismissing as preempted all claims against manufacturer of recalled medical device); *Morris v. Wyeth, Inc.*, 642 F. Supp. 2d 677, 682 (W.D. Ky. 2009) ("FDA's ability to withdraw a drug from the market says nothing about whether state tort law can effectuate a greater duty on a drug manufacturer, brand or generic, to maintain heightened label warnings").

10

labeling,[6] Plaintiffs, regardless, "cannot assert a 'pure' design defect claim under Illinois law." *Id.* Illinois has adopted comment k of the Restatement (Second) of Torts § 402A, "whereby a drug is not defectively designed if it is 'unavoidably unsafe and is properly prepared and there are adequate warnings.'" *Id.* (quoting comment k). Therefore, success on an Illinois design defect claim depends on the adequacy of the product labeling. "The Supreme Court has held that a claim of this nature is preempt[ed]." *Id.* Plaintiffs' claims against Walgreens for Strict Liability–Design Defect and Negligence–Failure to Warn (Counts II and III) therefore have no possible merit, *see id.* at *12−13, and cannot provide a basis for Plaintiffs to defeat removal.

### C. Plaintiffs' remaining claims premised on design defect and failure-to-warn theories likewise are preempted

The MDL Court further explained that claims not explicitly labeled "design defect" or "failure-to-warn" but nevertheless "*based upon* ranitidine's allegedly defective design and inadequate labels/warnings" are preempted by federal law. *See In re Zantac*, 510 F. Supp. 3d at 1250 (emphasis added). Plaintiffs' claims here for General Negligence and Breach of Express and Implied Warranties (Counts V, VII, and VIII) are based on ranitidine's allegedly defective design and inadequate label. *See, e.g.*, Dkt. No. 1-1. ¶ 193 (Count V: Defendants allegedly "failed to exercise ordinary care in the design, manufacture, testing, marketing, labeling, packaging . . ." of ranitidine-containing products and "failed to prevent or adequately warn of" risks of using them); ¶ 224 (Count VII: Defendants' products "did not contain labels representing the true and adequate nature of the risk associated with their use"); ¶ 235 (Count VIII: Defendants' products "did not contain labels representing the true and adequate nature of the risk associated with their use").

---

[6] *See* Dkt. No. 1-1 ¶ 149 (arguing defendants could have remediated the defective Zantac design by "provid[ing] proper warnings, expiration dates, stability information, storage and handling instructions and associated information.").

11

Therefore, these claims also cannot avoid preemption dismissal.[7] *See In re Zantac*, 510 F. Supp. 3d at 1250–51 (granting the MDL retailer Defendants' Motion to Dismiss state law general negligence and breach of warranty claims, remarking that "Courts have routinely reached th[e] conclusion" that all state-law claims based on allegedly inadequate labels/warnings of an FDA-approved prescription drug are preempted as against all defendants except those with the legal ability to alter a label or alter the drug's design).[8] For these reasons, Plaintiffs' other design defect and failure to warn claims against Walgreens have no chance of success, and similarly cannot provide a basis for Plaintiffs to avoid removal.

### D. Plaintiffs' Negligent Storage and Transportation Claim is Preempted and Implausible

#### 1. Plaintiffs' theory that Zantac was inherently defective renders their negligence claim against Walgreen preempted

Plaintiffs' remaining claim—Negligent Storage and Transportation (Count X)—likewise is inescapably preempted. In its order dismissing claims pled against the generic "store-brand" retailers (including Walgreens), the MDL Court concluded the "negligent storage and transportation" class action claims were preempted by federal law under *Mensing* and *Bartlett*. *See*

---

[7] Plaintiffs' make no effort in their motion to argue how their failure-to-warn claims might survive preemption. This capitulation makes plain why the Court should not adopt Plaintiffs' position that an affirmative defense can *never* support fraudulent joinder. Pls.' Mot. at 5–6. When claims, like Plaintiffs', are so clearly preempted by federal law, the fraudulent joinder doctrine urges removal. *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009) ("A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction."). To hold otherwise permits pharmaceutical litigation plaintiffs free reign to destroy diversity jurisdiction simply by naming any non-diverse participant in the supply chain, regardless of how clearly and frequently courts have rejected such claims as preempted.

[8] Plaintiffs' claims for unjust enrichment and loss of consortium (Counts IX and XII) are "derivative in nature and require that the defendant be liable for the injuries" to Plaintiffs. *Allender v. Guardian Life Ins. Co. of Am.*, 592 F. Supp. 541, 544 (N.D. Ill. 1984). Because Plaintiffs' underlying claims are preempted for the reasons explained herein, their derivative claims for unjust enrichment and loss of consortium are not viable. Therefore, they, too, cannot provide a basis for remand.

*In re Zantac*, 2021 WL 2865869, at *23. Just like Plaintiffs here, the MDL class action plaintiffs argued ranitidine-containing products are dangerous because of an "inherent risk of degrading into NDMA." *See In re Zantac*, 2021 WL 2865869, at *21; *see also* Dkt. No. 1-1 at ¶ 175 (alleging Zantac had an "inherent susceptibility to form NDMA") (emphasis added). And, like here, the MDL class action plaintiffs contended the store-brand retailers (including Walgreens) were liable for failing to mitigate the harm of this inherently defective product. *See In re Zantac*, 2021 WL 2865869, at *20; Dkt. No. 1-1. ¶¶ 255−56 (alleging Walgreens' storage and transportation practices caused Zantac to degrade into NDMA "more quickly"). *See* Ex. A (comparing Plaintiffs' negligent storage and transportation claim against Walgreens to MDL class action and personal injury amended master complaint negligent storage and transportation claims).

As the MDL Court properly recognized, Plaintiffs' theory "at [its] core" seeks to hold retailers liable for selling an unavoidably unsafe product. *Id.* at *21. Put differently, regardless how a retailer stored Zantac, the product was inevitably defective. *Id.* The retailers "could only make the warnings better (albeit ultimately inadequate) and make ranitidine less dangerous (albeit not safe)." *Id.* This theory is, therefore, grounded in design defect. *See id.* ("But for the alleged design defect, the Plaintiffs would have no claims."). But, as explained above, Walgreens, as a retailer, lacked any authority under federal law to change the FDA-approved Zantac product design or labeling. Thus, short of stopping selling the product altogether, federal law precluded Walgreens from making the product reasonably safe. The Supreme Court squarely rejects the notion that Walgreens was required "to stop selling ranitidine in order to comply with federal law while avoiding liability under state law." *Id.* (citing *Bartlett*, 570 U.S. at 475, 488−90).[9]

---

[9] In response to the MDL retailer defendants' motion for entry of final judgment on all claims pled against them in the MDL, the MDL Court clarified that its July 8, 2021, order finding class action claims against store-brand retailers preempted "did not rule on the question of whether a negligent storage and

### 2. Plaintiffs have not and cannot plead a plausible negligent storage and transportation theory

Regardless whether the claim is preempted, Plaintiffs' negligent storage and transportation claim fails to plausibly plead a viable cause of action against Walgreens. Plaintiffs allege Walgreens "systematically exposed ranitidine to excessive levels of heat and humidity that violated the instructions on the products' labels." Dkt. No. 1-1 ¶ 260; *see also* Pls.' Mot. at 11 (commenting that "to the extent Walgreen[s] negligently allowed ranitidine to overheat, it is liable"). Just like the MDL plaintiffs, however, the Garretson Plaintiffs plead no specific instances where Walgreens caused ranitidine product to be exposed to excessive heat or humidity. The only example Plaintiffs' Complaint offers is the vague allegation that "Retailer Defendants shipped ranitidine-containing products through the mail," which "does not guarantee controlled temperature or humidity." Dkt. No. 1-1 ¶ 262. But Plaintiffs do not actually allege *they* purchased Zantac shipped by Walgreens via common carriers. Thus, the common carrier transportation theory is irrelevant, and it was found to not be plausible by the MDL Court. *See In re Zantac*, 2021 WL 2685605, at *4.

Although Plaintiffs broadly allege Walgreens somehow "systematically exposed ranitidine to excessive levels of heat and humidity," Dkt. No. 1-1 ¶ 260, they do not allege Walgreens exposed any of the ranitidine product used by *Mrs. Garretson* to excessive heat or humidity.[10] No

---

transportation claim against the [store-brand retailers] would be pre-empted, because the Court treated the Plaintiffs' count facially styled as a negligent storage and transportation claim that was sourced in design defect." *In re Zantac*, 9:20-md-02924-RLR, ECF 4595 (Nov. 1, 2021). The Court's clarification of its holding does not change the fact that Plaintiffs' negligent storage and transportation claim as pled in this action is preempted. As explained *infra*, Plaintiffs' negligent storage and transportation allegations are indistinguishable from those pled in the class action complaint. For the same reasons the class action storage and transportation claim is preempted, so too is Plaintiffs' identical negligent storage and transportation claim here.

[10] Whether it is theoretically possible that Plaintiffs could later amend their complaint to specifically allege Walgreens overheated the specific ranitidine product used by Mrs. Garretson is irrelevant to the

matter, as recognized by the MDL Court, merely alleging that a party exposed a pharmaceutical drug product to temperatures in excess of the recommended range printed on the product labeling is alone insufficient to plead a violation of the Federal Food, Drug and Cosmetic Act ("FDCA"). *See In re Zantac*, 2021 WL 2685605, at *8 (explaining that the FDCA "addresses the scenario where a drug's quality or purity degrades to the point where it becomes improper to sell in 21 U.S.C. § 351(b)"). Pursuant to the FDCA, a drug's quality or purity may not fall below the standard articulated in the United States Pharmacopoeia ("USP"). The USP provides that room temperature drugs (like Zantac) may "be subjected to a temperature of 104 degrees (40 degrees Celsius), provided the exposure to 104 degrees does not exceed 24 hours." *Id.* Yet, like the MDL plaintiffs, the Garretson Plaintiffs do not argue Walgreens exposed even a single dose of Mrs. Garretson's Zantac to 104 degree temperatures, much less for over 24 hours. *See id.* ("Plaintiffs have not alleged that any Defendant violated the USP"). Just as the MDL Court held the virtually identical negligent storage and transportation claim implausibly pled, so, too, should this Court.

Because the negligent storage and transportation claims are preempted and because they are implausibly pled, there is no reasonably possibility that Plaintiffs can succeed. Therefore, Walgreens was fraudulently joined, and removal was proper.

## II. The Court should defer ruling on Plaintiffs' remand motion pending transfer

The Court has inherent authority to stay the action until the JPML resolves Plaintiffs' opposition. *Sanders v. Merck & Co.*, No. 07-cv-64-GPM, 2007 WL 924497, at *2 (S.D. Ill. Mar. 27, 2007) ("The decision to grant a stay rests within the Court's discretion."). For the reasons provided in Defendants' Motion to Stay, filed on November 3 (Dkt. No. 5), it is in the interest of

---

instant question whether their allegations, as pleaded, state a potentially viable claim. The determination of fraudulent joinder must be based upon the plaintiff's pleadings at the time of removal. *Rettinghouse v. Pride Mobility Prod. Corp.*, No. 06-cv-169-WDS, 2007 WL 951939, at *1 (S.D. Ill. Mar. 28, 2007).

15

judicial economy and fairness to stay these proceedings while waiting for the JPML to transfer this action to the Zantac MDL. The MDL judge is in an ideal position to resolve the remand question in a fair and expeditious manner.

### III. Walmart's Grounds for Removal Are Not Objectively Unreasonable, and Plaintiffs are Not Entitled to Fees and Expenses

Plaintiffs seek an award of fees and expenses for the costs of litigating the instant Motion under the fee-shifting provision of 28 U.S.C. § 1447(c). Such an award is not warranted here, where Walmart has objectively reasonable bases for removing this action. *Wilson v. Casey's Gen. Stores, Inc.*, No. 12-939-GPM, 2013 WL 1287378, at *3 (S.D. Ill. Mar. 27, 2013) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.") (quoting *Martin v. Franlin Capital Corp.*, 546 U.S. 132 (2005)). The Court need look no further to find these reasonable bases than the various MDL decisions cited above, which, collectively, deemed meritless all claims pled against retail sellers of Zantac. Plaintiffs protest that the MDL Court left open a tiny crack through which individual plaintiffs could theoretically plead an actionable negligent storage and transportation claim. Yet, Plaintiffs did not heed the MDL Court's warnings about what was needed to turn the theoretical into the actionable; instead their Complaint recycles the same vague and conclusory negligent storage and transportation allegations the MDL Court deemed woefully short of plausible. *In re Zantac*, 2021 WL 2685605, at *10; Ex. A. This is a clear case of Plaintiffs' counsel, displeased with the exacting scrutiny of the MDL Court, hoping instead for better luck in a different forum.

Walmart did not remove this case for the purpose of prolonging litigation, as Plaintiffs complain. If anything, removal will *accelerate* the pace of this litigation. The MDL is only a few short months from hearings on general causation summary judgment and bellwether selection. The

16

MDL Court also recently stated it will "entertain discussion at a future status conference on how individualized negligence claims should be addressed in this MDL in light of this Court's mandate to complete pretrial proceedings." *In re Zantac*, 9:20-md-02924-RLR, ECF 4595 (Nov. 1, 2021). Therefore, Plaintiffs' statement that their claims against the retailer defendants are certain to eventually be remanded is premature.

This removal is based on objectively reasonable bases for removal; this case belongs in federal court.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for remand should be denied.

Dated:  November 12, 2021                      **SHOOK, HARDY & BACON L.L.P.**

By: */s/ William F. Northrip*
William F. Northrip, #6315988
111 S. Wacker Drive, Suite 4700
Chicago, Illinois 60606-4314
Telephone:  (312) 704-7700
Facsimile:   (312) 558-1195
wnorthrip@shb.com

***Attorney for Defendants Walmart Inc. and Sam's West, Inc.***

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing **WALMART INC. AND SAM'S WEST, INC.'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REMAND** was served on all parties below via electronic mail on this 12th day of November, 2021.

/s/ *William F. Northrip*

Eric D. Holland
R. Seth Crompton
Greg Jones
HOLLAND LAW FIRM, LLC
211 North Broadway, Suite 2625
St. Louis, MO 63102
Telephone: (314) 241-8111
Email: eholland@hollandtriallawyers.com
scrompton@hollandtriallawyers.com
gjones@hollandtriallawyers.com

Ann E. Callis
Erika Stassi
HOLLAND LAW FIRM, LLC
1324 Niedringhaus Avenue
Granite City, IL 62040
Telephone: (618) 452-1323
Email: acallis@hollandtriallawyers.com
estassi@hollandtriallawyers.com

and

Tracy A. Finken
Thomas R. Anapol
ANAPOL WEISS
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130
Email: tfinken@anapolweiss.com
tanapol@anapolweiss.com

*Attorneys for Plaintiffs*
*Debra and Richard Garretson*

William D. Shultz, Jr. #06207607
Candice C. Kusmer, #06284948
MANNING GROSS + MASSENBURG LLP
1405 Green Mount Road, Suite 400
O'Fallon, Illinois 62269
Telephone:  (618) 277-5500
Email: wshultz@mgmlaw.com
ckusmer@mgmlaw.com

*Attorneys for Defendant Dr. Reddy's Laboratories Inc.*


Erin M. Pauley
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone:  (312) 214-4598
Email: Erin.Pauley@btlaw.com

*Attorney for Defendants Walgreens Boot Alliance, Inc., Walgreen Co., and Bond Drug Company of Illinois*