# Exhibit A

| *Garretson v. Dr. Reddy's, et al.* | *MDL AMENDED MASTER PERSONAL INJURY COMPLAINT* | *MDL CONSOLIDATED MEDICLA MONITORING CLASS ACTION COMPLAINT* |
|---|---|---|
| **COUNT X - NEGLIGENT STORAGE AND TRANSPORTATION**<br><br>**(Against Retailer Defendants Walmart and Walgreens)**<br><br>\*\*\*<br><br>252. As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.<br><br>253. Defendants Walmart and Walgreens were well aware of the need to maintainsensitive pharmaceutical drugs under proper shipping, transportation, and storage conditions, and that maintaining the highest safety techniques is best for the consumer, including Plaintiff Debra Garretson. Pharmaceutical transportation companies are well aware of the importance of precise temperature control down to the degree, and advertise on their ability to provide precise, quality service. | **COUNT X: NEGLIGENT STORAGE AND TRANSPORTATION OUTSIDE THE LABELED RANGE**<br><br>**(Against All Retailer and Distributor Defendants)**<br><br>\*\*\*<br><br>2209. As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.<br><br>2210. Retailer and Distributor Defendants are well aware of the need to maintain sensitive pharmaceutical drugs under proper shipping and storage conditions, and that maintaining the highest safety techniques is best for the consumer. Pharmaceutical transportation companies are well aware of the importance of precise temperature control down to the degree, and advertise on their ability to provide precise, quality service. More precise, colder transportation is, of | **ADDITIONAL ALLEGATIONS SPECIFIC TO PLAINTIFFS' COUNTS FOR NEGLIGENT STORAGE AND TRANSPORTATION**<br><br>951. As alleged above, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.<br><br>952. Brand Manufacturer Defendants, Generic Manufacturer Defendants and StoreBrand Defendants are well aware of the need to maintain sensitive pharmaceutical drugs under proper shipping and storage conditions, and that maintaining the highest safety techniques is best for the consumer. Brand Manufacturer Defendants and Generic Manufacturer Defendants are and were well aware of the importance of precise temperature control down to the degree as well as the importance of precise humidity control. More precise, colder |

More precise, colder transportation is, of course, more expensive than less precise, warmer transportation.

254. Testing of the quantity of NDMA in ranitidine performed to date has shown substantial variation among different batches. Some ranitidine has significantly more NDMA when tested.

255. NDMA forms due to chemical reactions in the human body, and also from degradation before consumption (principally heat, humidity, or time). Testing is performed before consumption and the age of the ranitidine is documented, so neither time nor degradation in the body should produce substantial variation. The best inference must be that substantial variation in heat and humidity is causing differing amounts of NDMA to form.

256. Different ranitidine-containing products listed slightly different storage and transportation requirements, but a common label requirement was "store at 20°C to

course, more expensive than less precise, warmer transportation.

2211. Testing of the quantity of NDMA in ranitidine performed to date has shown substantial variation among different batches. Some ranitidine has much more NDMA when tested, and some has less.

2212. NDMA forms due to chemical reactions in the human body, and degradation before consumption (principally heat, humidity, or time). Testing is performed before consumption and the age of the ranitidine is documented, so neither time nor degradation in the body should produce substantial variation. The best inference must be that substantial variation in heat and humidity is causing differing amounts of NDMA to form.

2213. Different ranitidine-containing products listed slightly different storage and transportation requirements, but a common label requirement was "store at 20°C to 25°C (68°F to 77°F)" and "avoid excessive heat or humidity."

transportation is, of course, more expensive than less precise, warmer transportation.

953. The temperature and humidity specifications placed on Ranitidine-Containing Products also affect the stability of Ranitidine-Containing Products.

954. NDMA forms due to chemical reactions in the human body, and degradation before consumption (principally heat, humidity, or time). Testing is performed before consumption and the age of the ranitidine is documented, so neither time nor degradation in the body should produce substantial variation. The best inference must be that substantial variation in heat and humidity is causing differing amounts of NDMA to form.

955. Defendants are aware that Ranitidine is highly sensitive to humidity and moisture. Ranitidine that is subjected to humidity and/or moisture, degrades quickly and forms excessive amount of NDMA.

956. Defendants must account for these heat and humidity conditions

25°C (68°F to 77°F)" and "avoid excessive heat or humidity."

257. Upon information and belief, Retailer Defendants systematically exposed ranitidine to excessive levels of heat and humidity that violated the instructions on the products' labels.

258. Upon information and belief, Retailer Defendants failed to implement rigorous policies to ensure substantial compliance with the heat and humidity requirements on product labels. This failure led to widespread noncompliance.

259. For example, Retailer Defendants shipped ranitidine-containing products through the mail. This method of transportation—whether through the United States Postal Service or large common carriers such as FedEx and UPS—does not guarantee controlled temperature or humidity. Because of Retailer Defendants' choice to allow this method of transportation, ranitidine-containing products shipped through the mail were

2214. Upon information and belief, Retailer and Distributor Defendants systematically exposed ranitidine to excessive levels of heat and humidity that violated the instructions on the products' labels.

2215. Upon information and belief, Retailer and Distributor Defendants failed to implement rigorous policies to ensure substantial compliance with the heat and humidity requirements on product labels. This failure led to widespread noncompliance.

2216. For example, Retailer and Distributor Defendants shipped ranitidine-containing products through the mail. This method of transportation—whether through the United States Postal Service or large common carriers such as FedEx and UPS—does not guarantee controlled temperature or humidity. Because of Distributor and Retailer Defendants' choice to allow this method of transportation, ranitidine-containing products shipped through the mail were systematically subject to

and specifications in order to set proper shipping, storage and handling policies as well as accurate retest and expiration dates.

957. Testing of the quantity of NDMA in ranitidine performed to date has shown substantial variation among different batches. Some ranitidine has much more NDMA when tested, and some has less.

958. Defendants admit that substantial variation exists in NDMA levels in their Ranitidine-Containing Products, and that levels increase over time but more so when subjected to heat and humidity.

959. Different Ranitidine-Containing Products listed slightly different storage and transportation requirements, but a common label requirement was "store at 20°C to 25°C (68°F to 77°F)" and "avoid excessive heat or humidity."

960. Manufacturer Defendants and Store-Brand Defendants transport finished drug product from their facilities to distributor warehouses, as well as storing finished drug products in their facilities.

systematically subject to excessive heat or humidity on days when the weather was hot or humid.

260. Retailer Defendants, directly or indirectly, transported, stored, handled, and/or sold ranitidine-containing products that were used by Plaintiffs.

261. Under Illinois law, a retailer or distributor has a duty to exercise reasonable care in transporting and storing products.

262. Retailer Defendants breached this duty by failing to implement or enforce policies to ensure ranitidine-containing products remained free from excessive heat and humidity, as required both by the duty of reasonable care and the label.

263. At all relevant times, Retailer Defendants had a duty to exercise reasonable care in the storage and transportation of ranitidine-containing products to ensure the products were not unreasonably dangerous to consumers and users.

264. At all relevant times, Retailer Defendants knew or should have known of the need for storing and

excessive heat or humidity on days when the weather was hot or humid.

2217. Retailer and Distributor Defendants, directly or indirectly, transported, stored, handled, and/or sold ranitidine-containing products that were used by Plaintiffs.

2218. At all relevant times, Retailer and Distributor Defendants had a duty to exercise reasonable care in the storage and transportation of ranitidine-containing products to ensure the products were not unreasonably dangerous to consumers and users.

2219. At all relevant times, Retailer and Distributor Defendants knew or should have known of the need for storing and transporting ranitidine-containing products within the labeled temperature range and at low humidity.

2220. Retailer and Distributor Defendants ignored this risk. They did not ensure ranitidine-containing products were stored at low humidity or within the temperature range on the label. Instead, some ranitidine was subjected to

961. Some Brand Manufacturer Defendants and Generic Manufacturer Defendants also purchase API, which they store at their facilities. Their agreements with API manufacturers govern how API is transported to them. The storage and transportation conditions of API is not dictated by the label for finished Ranitidine-Containing Products and may differ.

962. Upon information and belief, Manufacturer Defendants and Store-Brand Defendants systematically caused Ranitidine-Containing Products to be exposed to excessive levels of heat and/or humidity during manufacture, storage, shipping and handling that violated the instructions on the finished products' labels and caused ranitidine to degrade more quickly thereby increasing the levels of NDMA in the product.

963. Based upon the documents produced by Defendants and based upon further information and belief, the Manufacturer Defendants and Store-Brand Defendants failed to

transporting ranitidine-containing products within the labeled temperature range and at low humidity.

265. Retailer Defendants ignored this risk. They did not ensure ranitidine-containing products were stored at low humidity or within the temperature range on the label. Instead, ranitidine products were subjected to excessive humidity and heat during storage, transportation, and shipping which caused the drug to degrade leading to the formation of excessive levels of NDMA.

266. Ignoring the risks of NDMA forming was unreasonable and reckless.

267. Plaintiffs did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to ranitidine-containing products.

268. Defendants' negligence was a substantial factor in causing Plaintiffs' injuries.

269. As a direct and proximate result of these systematic failures, excessive levels of NDMA formed in

excessive humidity and heat during storage, transportation, and shipping which caused the drug to degrade leading to the formation of excessive levels of NDMA.

2221. Ignoring the risks of NDMA forming was unreasonable and reckless.

2222. Plaintiffs did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to ranitidine-containing products.

2223. Defendants' negligence was a substantial factor in causing Plaintiffs' injuries.

2224. As a direct and proximate result of Defendants' failure to store and transport ranitidine-containing products properly, Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

ensure that their finished Ranitidine-Containing Products were stored and transported safely and were not exposed to excessive heat and humidity.

964. Based upon the documents produced by Defendants and based upon further information and belief, the Manufacturer Defendants and Store-Brand Defendants failed to ensure that API they stored, transported, or over which they could control storage or transportation, were not exposed to excessive heat and humidity.

965. Upon information and belief, Defendants failed to implement rigorous policies to ensure substantial compliance with the heat and/or humidity requirements on product labels. This failure led to widespread noncompliance.

966. For example, Manufacturer Defendants shipped Ranitidine-Containing Products through the mail. This method of transportation – whether through the United States Postal Service or large common carriers such as FedEx and UPS –

| | | |
|---|---|---|
| the ranitidine-containing products the Retailer Defendant handled, transported, stored, and sold. These high levels of NDMA caused Plaintiffs' injuries.<br><br>270. As a direct and proximate result of Retailer Defendants' failure to store and transport ranitidine-containing products properly, Plaintiff Debra Garretson has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages. | | does not guarantee controlled temperature or humidity. Because of Manufacturer Defendants' and Store-Brand Defendants' choice to allow this method of transportation, Ranitidine-Containing Products shipped through the mail were systematically subject to excessive heat or humidity on days when the weather was hot or humid. In addition, Manufacturer Defendants and Store-Brand Defendants failed to properly monitor temperature and/or humidity levels during storage and transport.<br><br>967. Based upon the documents produced by Defendants and based upon further information and belief, the Manufacturer Defendants and Store-Brand Defendants failed to ensure that their Ranitidine-Containing Products (in both API and finished dose form) were stored and transported safely and were not exposed to excessive heat and humidity and systematically exposed ranitidine to excessive levels of heat and humidity that violated the instructions on the products' labels. |

|  |  |  |
|--|--|--|
|  |  | 968. Defendants, directly or indirectly, transported, stored, handled, and/or sold Ranitidine-Containing Products that were used by Plaintiffs. |
|  |  | 969. At all relevant times, Manufacturer Defendants and Store-Brand Defendants had a duty to exercise reasonable care in the storage and transportation of ranitidine API and Ranitidine-Containing Products to ensure the products were not unreasonably dangerous to consumers and users. |
|  |  | 970. At all relevant times, Manufacturer Defendants and Store-Brand Defendants knew or should have known of the need for storing and transporting finished Ranitidine-Containing Products within the labeled temperature range and at low humidity, and for storing and transporting Ranitidine-Containing Products and ranitidine API at a reasonable, low temperature that would prevent degradation, and at low humidity. |
|  |  | 971. Manufacturer Defendants and Store-Brand Defendants ignored this |

|  |  | risk. They did not ensure ranitidine API and Ranitidine-Containing Products were stored at low humidity or within the temperature range on the label. Instead, ranitidine API and Ranitidine-Containing Products were subjected to excessive humidity and/or heat during transportation and shipping which caused the drug to degrade leading to the formation of excessive levels of NDMA.<br>972. Ignoring the risks of degradation and NDMA forming was unreasonable and reckless.<br>973. Plaintiffs did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Ranitidine-Containing Products.<br>974. Defendants' negligence was a substantial factor in causing Plaintiffs' injuries. |
|---|---|---|